## Leonard v. Latrobe Area Hospital

*Anthony W. DeBernardo,* for plaintiffs.
*Gayle L. Godfrey,* for defendant.

SCHERER, *J.,* May 21, 1992—This matter comes before the court upon the motion for summary judgment of the defendants Latrobe Area Hospital and George E. Mamo, M.D.

The plaintiffs filed suit against the defendants alleging that the death of their mother, Elizabeth Gault, was the result of the negligence of the defendants in regard to the care and treatment rendered to James Gault, the decedent's husband, who killed her in November 1983. The decedent's husband was a patient in the defendant Hospital from September 10, 1983, through September 27, 1983, was admitted to the psychiatric unit, and was under the care of the defendant Mamo. The plaintiffs allege that the defendants were negligent in failing to warn the decedent, Elizabeth Gault of James Gault's dangerous propensities.

The defendants seek summary judgment arguing that the plaintiffs have failed to state a cause of action. The defendants maintain that there is no common law rule or statutory requirement which imposes a duty upon a psychiatrist to warn a non-patient of a patient's dangerous propensities. The plaintiffs respond that an issue of fact

exists and liability is dependent upon whether the acts of the patient were foreseeable.

The defendants' position is that the plaintiffs have failed to allege facts which would support a finding that the patient threatened to inflict harm on a particular individual. By affidavit, Dr. Mamo has testified that no such communication existed. The defendants argue that the plaintiffs have merely alleged that a hostile dependent relationship existed between the decedent and James Gault and that the defendants were aware of the violent propensities of James Gault through the plaintiffs.

The undisputed facts in the present matter indicate that the defendants were aware that the decedent's husband had in the past, abused and threatened the decedent. At the time of the discharge of James Gault, it is also undisputed that there were signs of a hostile dependent relationship with the decedent and James Gault was diagnosed as having an organic brain syndrome with depression. The plaintiffs have alleged that the defendants failed to warn the family of James Gault's mental condition, his propensity towards violence, and to explain a "possible" confrontation with his wife.

*Dunkle v. Food Service East Inc.,* 400 Pa. Super 58, 582 A.2d 1342 (1990), addresses the issue of whether psychologists, counselors and doctors owe a legal duty to warn plaintiff's decedent of a patient's propensity to violence. The Superior Court affirmed the trial court's grant of summary judgment in favor of the psychologist. *Dunkle* at 71, 582 A.2d at 1348.

In *Tarasoff v. Regents of University of California,* 17 Cal. 3d 425, 551 P.2d 334 (1976), the California Supreme Court concluded that in limited circumstances, a psychologist may have a duty to protect an identifiable

and foreseeable victim of a patient's dangerous propensities.[1] Reviewing *Tarasoff,* the Pennsylvania Superior Court concluded that the facts of *Dunkle* did not result in the imposition of the duty contemplated by the California court. *Dunkle* at 67, 582 A.2d at 1346.

"This Commonwealth has never expressly adopted the California opinion in *Tarasoff.* However, even if we were to accept the *Tarasoff* holding as law in this jurisdiction, we would not find that decision determinative of the instant appeal. Conversely, we find that the *Tarasoff* rationale should be confined to the very limited circumstances presented in that case. We narrowly construe the California court's holding. Contrary to the appellants' position in the instant case, we will not interpret *Tarasoff* to mean that, in effect, strict liability should be imposed upon treating physicians for the wrongful acts of their patients where there is any reason to believe that a third party might be endangered by the patient's possible misconduct and the medical professional fails to inform the third party of same. Such a rule would be unworkable and illogical. More importantly, it would infringe upon other well-established doctrines in our jurisprudence." *Id.* at 67-68, 582 A.2d at 1347.

The patient in *Dunkle* did not communicate any inclination to harm his victim. *Id.* at 64, 582 A.2d at 1345. The court explained that under that particular facts, "we decline to extend the duty to protect a non-identifiable

---

1. A patient confided his intentions to kill the plaintiffs' decedent to his psychologist. The patient was temporarily detained by campus police at the therapist's request. Upon the patient's release by the campus police, he killed the plaintiffs' decedent. *Tarasoff,* 551 P.2d at 339, 340.

(in advance of her death) and arguably non-foreseeable third-party victim." *Id.* The Superior Court further stated that the fact that the victim lived with the patient did not support the inference that the victim would be predisposed to abuse. *Id.* at 64-65, 582 A.2d at 1345, 1346.

The Superior Court concluded that "a psychologist (or psychiatrist) owes no duty to warn or otherwise protect a non-patient where the patient has not threatened to inflict harm on a particular individual." *Id.* at 69, 582 A.2d at 1347. Such a conclusion was necessary to support the patient-psychologist relationship and privilege. *Id.*

"We find no common law rule that imposes a duty on a psychologist or psychiatrist to warn a non-patient of a patient's dangerous propensities. In Pennsylvania, nor is there a statutory duty to protect a non-patient from similar potential harm. In the absence of legislative directive or reforms that specifically address this problematic issue, we decline to impose such a stringent legal duty on health care professionals under the fact of this case." *Id.*

*Dunkle* has recognized that the relationship between the psychiatrist and patient is unique in that "the open and confidential character of a psychotherapeutic dialogue encourages patients to express threats of violence." *Dunkle* at 68, 582 A.2d at 1347 (citing *Tarasoff* at 27, 551 P.2d at 347).

The plaintiffs argue that the decedent was an identifiable and foreseeable victim and that foreseeability is an issue of fact to be determined by a jury. In *Crosby v. Sultz,* 405 Pa. Super. 527, 592 A.2d 1337 (1991), the court emphasized the issue of foreseeability in regard to whether

a physician owes a duty to a third party. The *Crosby* court did not impose a duty upon the doctor to protect a third party from harm which could be inflicted by a patient.[2] *Crosby* at 546, 592 A.2d at 1347.

Reviewing the present matter and *Dunkle,* whether a duty is to be imposed requires consideration beyond the question of foreseeability. *Dunkle* required more than an element of foreseeability and stated that the fact the patient lived with the decedent was not enough. *Dunkle* at 64-65, 582 A.2d at 1345. See also *Leedy v. Hartnett,* 510 F.Supp. 1125 (M.D. Pa. 1981); *Tarasoff,* 551 P.2d at 342.

The Pennsylvania appellate courts and state legislature have not recognized the duty which the plaintiffs seek to impose upon the defendants. An allegation that James Gault told Dr. Mamo he was going to kill his wife as in *Tarasoff,* would also fail since no duty to warn arises under Pennsylvania law as it currently exists. No duty is imposed on a psychiatrist to protect a third party from harm which could be inflicted by a patient.[3] *Dunkle* at 63, 582 A.2d at 1345.

The court will enter the following order:

---

2. A patient, suffering from diabetes, struck pedestrians with his automobile as a result of fainting at the wheel of his car.

3. In *DiMarco v. Lynch Homes,* 384 Pa. Super 463, 559 A.2d 530 (1989), a duty was imposed on a doctor who had given incorrect advice to his patient. A third party was infected with the patient's communicable disease as a result of the third party's reliance on the doctor's misadvice. *DiMarco* at 473, 559 A.2d at 535. A statutory duty also existed in regard to the doctor and the treatment of communicable disease. *Id.* at 471, 559 A.2d at 533. *DiMarco* is clearly distinguishable from the present matter.

## ORDER OF COURT

And now, May 21, 1992, the motion for summary judgment of the defendants Latrobe Area Hospital and George E. Mamo, M.D. is granted.